IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETT INTERNATIONAL CORP. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 00-4434 |
| | : | |
| TCI TRANS COMMODITIES AG, et al. | : | |

**SUPPLEMENTAL MEMORANDUM OF LAW
OF PLAINTIFF, KENNETT INTERNATIONAL CORPORATION,
RE CHOICE OF LAW RELEVANT TO MOTION OF DEFENDANT
TRANS COMMODITIES, INC. FOR SUMMARY JUDGMENT**

**I.      Introduction**

Plaintiff Kennett International Corporation, a Pennsylvania corporation, brought this action against TCI Trans Commodities, Inc. ("TCI Switzerland"), a Swiss corporation, and Trans Commodities Inc. ("TCI NY"), a New York corporation, seeking to recover unpaid steel brokerage commissions earned by Kennett on sales of steel in the United States that were arranged at the direction of the defendants.

TCI Switzerland subsequently went bankrupt in Switzerland and has been liquidated. The Bankruptcy Office administering the matter approved the principal amount of Kennett's $596,497.60 claim in full, but because of the negligible assets of TCI Switzerland remaining for general creditors, Kennett received only about 1.08% of the face value of the acknowledged claim (11,027 Swiss francs [CHF], of the CHF 1,017,446 approved.). (Declaration of Michael Macready in Opposition to Motion for Summary Judgment, ¶ 7 and Ex. D.

In this action, Kennett seeks to recover the remaining amount of the unpaid commissions from defendant TCI NY.  TCI NY has moved for summary judgment on the issue of its liability as an alter ego of TCI Switzerland or other corporate-veil-piercing theories.  In the parties' initial

briefing, TCI NY proposed to apply Pennsylvania law to the analysis of these issues, while Kennett proposed to apply New York law. Neither party has ever proposed to apply Swiss law.

The Court's June 28, 2011 Order directed the parties to submit supplemental briefs addressing two questions:

> "1      Why is the internal affairs doctrine not dispositive of the choice-of-law inquiry? See, e.g., Banjo Buddies, Inc. v. Renosky, 399 F.3d 168 (3d Cir. 2005)."
>
> 2.      If the internal affairs doctrine is applicable to this action, whose law should apply? The plaintiff has argued for the application of New York law, whereas the defendant has suggested that Swiss law might apply."

## II.     The "Internal Affairs Doctrine" Is Not Dispositive or Applicable

Case law within Pennsylvania and the Third Circuit on choice of law for alter ego/corporate veil determinations is very sparse. Most commonly, the court has dodged the issue and decided that no choice of law determination was required, because there were no meaningful differences between different states' alter-ego principles as applied to the case at bar.[1] In other cases, the parties did not argue about choice of law, and the Court simply applied either local law or whatever law the parties mutually assumed was applicable.

In its initial brief, Kennett proposed that New York state law should apply because of the "internal affairs doctrine" cited in a footnote in the Banjo Buddies case, 399 F.3d at 179 n.10. The internal affairs doctrine "holds that courts look to the law of the state of incorporation to resolve issues involving the internal affairs of a corporation." On further review, Kennett has concluded that

---

[1]    See, e.g., Star Creations Investment Co., Ltd. v. Alan Amron Development, Inc., 1995 WL 495126 at *6 (E.D. Pa. 1995) (no need to choose among alter ego principles as applied in New York, Pennsylvania, and Florida; defendant was alter ego under any test.); Garden State Tanning, Inc. v. Mitchell Mfg. Group, Inc., 55 F. Supp. 2d 337, 343 n.8 (E.D. Pa. 1999) (choice of Michigan or Pennsylvania law for alter ego claim 'makes little or no difference, practically speaking'); Ragan v. Tri-County Excavating, Inc., 1994 WL 67703 at *4 (E.D. Pa. 1994) ("Whether federal or state law is applied to this question, however, is largely a 'question[] of academic interest, but little practical significance.'"); Wersba v. Seiler, 263 F. Supp. 838, 844 n.2 (E.D.Pa. 1967) (New York and Pennsylvania law on 'piercing the corporate veil' are substantially similar; no need to decide conflict of laws question.)

its original analysis was incorrect, and that the internal affairs doctrine does not govern choice of law in the present dispute.

> The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships **among or between** the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands.

Edgar v. MITE Corp., 457 U.S. 624, 645 (1982) (emphasis added). "It would be impractical, for example, if an election of directors, an issuance of shares, a payment of dividends, a charter amendment, or a consolidation or reorganization were to be held valid in one state and invalid in another." Restatement (2nd) of Conflict of Laws § 302, comment e; see also Id., § 309, comment c.

The internal affairs doctrine is consequently applied most often to lawsuits brought by persons with direct interests in a company, such as shareholders and minority partners, typically seeking to enforce their shareholder rights or charging mismanagement, breach of fiduciary duty, or other violations of internal corporate obligations by officers, directors, or the corporation itself. See, e.g., In re Teleglobe Communications Corp., 493 F.3d 345, 385-86 (3d Cir. 2007) (alleged breach of fiduciary duty by ultimate owner of corporation); In re Textainer Partnership Securities Litigation, 2005 WL 1791559 (N.D. Cal. 2005) ("relationships inter se" of general and limited partners.).

The case before the Third Circuit Court of Appeals in Banjo Buddies did not involve alter ego/corporate veil claims. The plaintiff alleged that one of its own directors breached his fiduciary duty of loyalty by stealing a corporate opportunity for himself, 399 F.3d at 172. The Court of Appeals held that that claim for breach of fiduciary duty was properly governed by the law of Wisconsin as the state of Banjo Buddies' incorporation.

The limited scope of Banjo Buddies can be confirmed by considering the only authority the Court cited as the basis for its choice of law determination:

>Because the District Court sits in Pennsylvania, it applies that state's conflict of law principles [citation omitted] and Pennsylvania has adopted the "internal affairs doctrine" by statute. See 15 Pa. Cons. Stat. § 4145(a); In re Estate of Hall, 731 A.2d 617, 622 (Pa. Super. 1999)."

399 F. 3d at 179 n.10. Importantly, 15 Pa. C. S. § 4145(a) says:

>The courts of this Commonwealth shall not dismiss or stay any action or proceeding **brought by a shareholder or representative of a foreign domiciliary corporation**, as such, against the corporation or any one or more of the shareholders or representatives thereof, as such, on the ground that the corporation is a foreign corporation for profit or that the cause of action relates to the internal affairs thereof, but every such action shall proceed with like effect as if the corporation were a domestic corporation. Except as provided in subsection (b), the court having jurisdiction of the action or proceeding shall apply the law of the jurisdiction under which the foreign domiciliary corporation was incorporated.

The other citation in footnote 10, In re Estate of Hall, applied section 4145(a) in an action by a deceased shareholder's estate challenging the forced buyback of the decedent's shares. Consequently, Banjo Buddies does not purport to address choice of law in the context of an alter ego or veil-piercing claim by a third party, and is not dispositive of the choice of law inquiry.

### III.   What Law Should Apply?

Since the "internal affairs doctrine" is not controlling, the Court must revert to Pennsylvania's traditional choice of law analysis, described as a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court" which "directs courts to apply the law of the state with the 'most interest in the problem'. Specialty Surfaces Int'l, Inc. v. Continental Cas. Co., 609 F.3d 223, 229 (3d Cir. 2010). If confronted with a "true conflict" – where there are material differences between the relevant jurisdictions' substantive law – the Court is to "weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the [relevant] issue." Id.

In the present case, neither party has advocated or briefed the potential application of Swiss law, and the Court need not consider it. TCI NY raised the possibility only as the theoretical

outcome of applying the "internal affairs doctrine" to the defunct TCI Switzerland before returning to its core argument that Pennsylvania law should apply. TCI Switzerland has been liquidated, and Switzerland would have little or no governmental interest in the residual battles between a Pennsylvania plaintiff and a New York defendant. That leaves the decision as one between application of Pennsylvania law and New York law, <u>if</u> the Court concludes that there is a "true conflict" that would change the outcome of the present motion..

In the case at bar, it is relatively easy to articulate New York interests and contacts. As detailed at length in the <u>Affidavit of Michael Macready</u> and <u>Affidavit of Julian Connor</u> submitted by plaintiff in connection with TCI NY's motion, New York was the nerve center of the global TCI enterprise, the place where all decisions were ultimately made for TCI Switzerland, and the place from which diversions of TCI Switzerland's funds were engineered. New York has an obvious interest in any adjudication determining standards for the behavior of New York companies, and in particular whether New York corporations like TCI NY can or cannot insulate themselves from liability to third parties when they engage in misconduct through their domination of foreign affiliates. To the extent that the "internal affairs doctrine" has any indirect relevance, it is in the broad philosophy that such standards of corporate conduct are best determined by the state that regulates that corporation and which gave it life in the first place.

Conversely, it is not easy to identify a set of Pennsylvania interests in the alter ego issue for conflicts purposes, beyond its general interest in protecting Pennsylvania citizens like Kennett from unscrupulous out-of-state corporations.

This Court's analysis in <u>Curiale v. Tiber Holding Corp</u>., 1997 WL 597944 (E.D.Pa. 1997), reconsideration denied, 1997 WL 713950 (E.D. Pa. 1997) (using comparable New York choice of

law principles), is instructive.  In that case the Court focused on the misconduct that gave rise to the veil-piercing claims:

> However, as explained by one … judge, "as a general matter, the law of the state of incorporation normally determines issues relating to the *internal* affairs of a corporation … Different conflicts principles, however, apply where the rights of third parties *external* to the corporation are at issue." …
>
> The conflict of laws principles that apply when the rights of third parties that are external to the corporation are at issue "call for a weighing of contacts and governmental interests. … "Significantly more germane to this inquiry … are the points of contact with various nations of the transactions by which defendant allegedly disregarded the corporate form of [the Bermuda corporation] to the detriment of third parties."…In this case the transactions by which defendant allegedly disregarded [the Bermuda corporation's] corporate form took place in New York, and New York law should therefore apply to the veil-piercing issue.

Id. at 229.  See also Foster v. Berwind Corp., 1991 WL 21666 (E.D. Pa. 1991).  The same holds true here.

Consequently, although Kennett has retracted its misplaced citation to Banjo Buddies and the internal affairs doctrine as a basis for applying New York law, it respectfully submits that New York rather than Pennsylvania law should nonetheless be applied to the resolution of alter ego/corporate veil issues presented in this action.

                                                Respectfully submitted,

                                                /s/ Scott D. Patterson
                                                Scott D. Patterson
                                                Saul Ewing LLP
                                                1200 Liberty Ridge Drive, Suite 200
                                                Wayne PA 19087
                                                (610) 251-5089

                                                Attorney for Plaintiff, Kennett International Corporation