UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
----------------------------------------------------------------x

KENNETT INTERNATIONAL CORPORATION,

                              Plaintiff,

                  - v -

TCI TRANS COMMODITIES AG
and TRANS COMMODITIES, INC.,

                              Defendants.

----------------------------------------------------------------x

CIVIL ACTION
Docket No. 00-4434

## SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT TRANS COMMODITIES, INC.'S MOTION FOR SUMMARY JUDGMENT

**KESTENBAUM, DANNENBERG & KLEIN, LLP**
104 West 40th Street (20th Floor)
New York, NY 10018
(212) 486-3370

**BEGLEY, CARLIN & MANDIO**
680 Middletown Boulevard
P.O. Box 308
Langhorne, PA 19047
(215) 750-0110

*Attorneys for Defendant Trans Commodities, Inc.*

# **TABLE OF CONTENTS**

*Page*

Table of Cases and Authorities..................................................................ii

Preliminary Statement.......................................................................1

Argument.......................................................................1

    A.    The Genesis of the "Choice-of-Law" Issue in this Action...........................1

    B.    The Internal Affairs Doctrine is Inapplicable to Plaintiff's
        Claim Against Trans Commodities.................................................3

    C.    Even if the Internal Affairs Doctrine Were Applied,
        The Motion Should be Granted Under Swiss Law.................................7

    D.    Under General Choice-of-Law Jurisprudence Followed in
        Pennsylvania, it Should be Pennsylvania Law That is
        Applied to Plaintiff's Claim Against Trans Commodities..........................9

Conclusion.......................................................................14

i

# TABLE OF CASES AND AUTHORITIES

***Page***

Federal Cases

*American Contract Bridge League v. Nationwide Mutual Fire Insurance Co.*, 752 F.2d 71 (3d Cir. 1985)....9

*American International Underwriters Corp. v. Zurn Industries, Inc.*, 771 F. Supp. 690 (W.D. Pa. 1991)....10

*Atlantic Pier Associates, LLC v. Boardakan Restaurant Partners*, 647 F. Supp. 2d 474 (E.D. Pa. 2009)....9

*Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168 (3d Cir. 2005)....2, 3, 7

*Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435 (3d Cir. 1999)....3

*Coface Collections North American Inc. v. Newton*, 2011 WL 2176196 (3d Cir. June 6, 2011)....9

*Compagnie des Bauxites de Guinee v. Argonaut-Midwest Insurance Co.*, 880 F.2d 685 (3d Cir. 1989)....10, 11

*Guinan v. A.I. duPont Hospital for Children*, 597 F. Supp. 2d 485 (E.D. Pa. 2009)....6, 7

*Hammersmith v. TIG Insurance Co.*, 480 F.3d 220 (3d Cir. 2007)....9, 11, 12

*Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130 (2d Cir. 1993)....5

*Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)....9

*Melville v. American Home Assurance Co.*, 584 F.2d 1306 (3d Cir. 1978)....10, 11

*Mzamane v. Winfrey*, 693 F. Supp. 2d 442 (E.D. Pa. 2010)....3

*O'Loughlin v. Hunger*, 2009 WL 1084198 (E.D. Pa. Apr. 21, 2009)....10

*Shields v. Consolidated Rail Corp.*, 810 F.2d 397 (3d Cir.1987)....11

*Specialty Surfaces International, Inc. v. Continental Casualty Co.*, 609 F.3d 223 (3d Cir. 2010)....11

*Soviet Pan Am Travel Effort v. Travel Committee, Inc.*, 756 F. Supp. 126 (S.D.N.Y.1991)....5

*United Brass Works, Inc. v. American Guarantee & Liability Insurance Co.,*
819 F. Supp. 465 (W.D. Pa. 1992)..................................................................9

*Whirlpool Financial Corp. v. Sevaux,* 96 F.3d 216 (7th Cir. 1996).....................................3


Pennsylvania Cases

*Budtel Associates, LP v. Continental Casualty Co.,* 915 A.2d 640 (Pa. Super. Ct. 2006)......9-10

*Griffith v. United Airlines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964)....................................9


New York Cases

*Morris v. New York State Department of Taxation and Finance,*
82 N.Y.2d 135, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993)......................................11


Statutes, Treatises, and Other Authorities

FRCP Rule 44.1..........................................................................................3

15 Pa. C.S.A. § 4145(a)..........................................................................2, 3, 4, 7

Restatement (Second) of Conflicts of Laws § 188.................................................12

Restatement (Second) of Conflicts of Laws § 307...................................................5

B. Becchio, U. Wehinger, A. Farha & S. Siegel, Swiss Company Law (2d ed. 1996)............8

Gregory Scott Crespi, *Choice of Law in Veil-Piercing Litigation: Why Courts
Should Discard The Internal Affairs Rule and Embrace General Choice-of-Law
Principles,* 64 N.Y.U. Annual Survey of American Law 85 (2008)...............................6

1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 43.72
(rev. 2006)................................................................................................5

Frederick Tung, *Before Competition: Origins of the Internal Affairs Doctrine,*
32 J. Corp. L. 33 (2005) .............................................................................4

K. Youssef, Consent in Context: International Arbitration § 6:15 (2009)..........................8

**Preliminary Statement**

This supplemental memorandum of law is submitted on behalf of defendant Trans Commodities, Inc. ("Trans Commodities"), in accordance with this Court's Order filed on June 28, 2011 (amended as to scheduling by Orders filed on July 11 and September 1, 2011), directing supplemental briefing on the question of the applicable choice of law in this matter.

For the reasons set forth in greater detail below, Pennsylvania law, the original choice of law made by plaintiff in this action, should be used to resolve the issue that is the subject of the pending motion for summary judgment – that is, whether plaintiff should be permitted to "pierce the corporate veil" of the primary defendant, TCI Trans Commodities AG ("TCI Switzerland"), and to extend whatever liability may ultimately be found to exist on the part of that defendant to Trans Commodities, on the alleged ground that Trans Commodities acted as an "alter ego" of TCI Switzerland.

**Argument**

**A.    *The Genesis of the "Choice-of-Law" Issue in This Action***

At its core, this action presents a somewhat routine breach of contract claim against a corporation (TCI Switzerland), along with a somewhat less routine effort to pierce that entity's corporate veil and to extend the claimed liability to a second corporation (Trans Commodities).  Until this summary judgment motion was made and briefed, there did not appear to be a choice-of-law issue in this action, inasmuch as plaintiff had originally invoked Pennsylvania law, and no objection was made to that designation by either defendant.  It was only after the motion was made, and plaintiff was presented with the fact that Pennsylvania law

is unfavorable with respect to the specific type of "veil piercing" that is being attempted in this action, that plaintiff first sought to apply the law of a second jurisdiction – namely, New York, which is the state in which Trans Commodities is located.  At no time during the course of this action, or in the moving or opposition papers on this motion, has any party sought to invoke the law of a third jurisdiction, Switzerland, which is the country in which the alleged debtor corporation, TCI Switzerland, was created.

It is ironic that plaintiff chose Pennsylvania as the forum state for this action and, having originally invoked Pennsylvania's substantive law for the resolution of all legal claims against TCI Switzerland and Trans Commodities, is now urging application of the law of another jurisdiction.  Apparently, plaintiff's injection of the "internal affairs doctrine" into this case was brought about through the citation in its memorandum of law in opposition to the pending summary judgment motion of the Third Circuit Court of Appeals' decision in *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168 (3d Cir. 2005).  That case involved a breach of fiduciary duties claim against a corporate director, which the Court held fell within the scope of Pennsylvania's codified version of the internal affairs doctrine, 15 Pa. C.S.A. § 4145(a).  That statute provides, in its entirety, as follows:

> "The General Assembly hereby finds and determines that foreign domiciliary corporations substantially affect this Commonwealth. The courts of this Commonwealth shall not dismiss or stay any action or proceeding brought by a shareholder or representative of a foreign domiciliary corporation, as such, against the corporation or any one or more of the shareholders or representatives thereof, as such, on the ground that the corporation is a foreign corporation for profit or that the cause of action relates to the internal affairs thereof, but every such action shall proceed with like effect as if the corporation were a domestic corporation. Except as provided in subsection (b), the court having jurisdiction of the action or proceeding shall apply the law of the jurisdiction under which the foreign domiciliary corporation was incorporated."

2

15 Pa. C.S.A. § 4145(a) (hereinafter referred to as the "Internal Affairs Statute"), *cited in Banjo Buddies, supra* at 179 n.10.

In *Banjo Buddies*, the corporation whose veil it was that the plaintiff sought to pierce, in order to impose liability upon the defendant director, had been incorporated in Wisconsin, and the Court ruled that, under the Internal Affairs Statute, Wisconsin law should be applied to adjudicate the breach of fiduciary duties claim. In the case at bar, the corporation whose veil it is that plaintiff seeks to pierce, in order to impose liability upon Trans Commodities, was incorporated in Switzerland, so if this Court were to find that the Internal Affairs Statute is applicable, it would be Swiss law that should be applied to adjudicate the claim against Trans Commodities.[1]

**B.    *The Internal Affairs Doctrine is Inapplicable
       To Plaintiff's Claim Against Trans Commodities***

A "veil-piercing" or "alter ego" claim, such as that being pursued at bar by plaintiff against Trans Commodities, does not fall within the scope of the language of the Internal Affairs Statute because plaintiff is not "a shareholder or representative" of the foreign domiciliary corporation (TCI Switzerland). Therefore, it is respectfully submitted that, because it is Pennsylvania's "choice-of-law" principles that should be used to determine which jurisdiction's law should be applied to this dispute (see Section "D" below), there is no basis for invocation of the internal affairs doctrine, and this Court should, instead, rely upon

---

[1] Parenthetically, the Federal Rules of Civil Procedure require that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." FRCP Rule 44.1. Under Rule 44.1, it is incumbent upon the party seeking to impose the law of a jurisdiction other than the forum state of the action to "carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case." *Bel-Ray Co. v. Chemrite (Pty) Ltd.,* 181 F.3d 435, 440 (3d Cir. 1999) (citing *Whirlpool Financial Corp. v. Sevaux,* 96 F.3d 216, 221 (7th Cir. 1996)). Where that party fails to "satisfy both of these burdens, the law of the forum will apply." *Mzamane v. Winfrey,* 693 F. Supp. 2d 442, 469 (E.D. Pa. 2010) (citing *Bel-Ray, supra* at 441).

Pennsylvania's general choice-of-law jurisprudence for determining which jurisdiction's substantive law applies to the claim against Trans Commodities.

As used in one form or another in various states in the United States, the internal affairs doctrine originated from the common-law notion that, in the absence of some agreement between the parties to the contrary, disputes regarding the internal affairs of a corporation ought to be resolved according to the laws of the state in which the corporation was formed.  Of course, a state's legislature may modify any common-law doctrine through the adoption of statutory law, which is precisely what occurred in the Commonwealth of Pennsylvania in the form of the Internal Affairs Statute.

Courts following the internal affairs doctrine have reasoned that it provides an appropriate means of achieving a measure of protecting the expectations of parties with interests in the corporation, and at the same time avoiding the specter of subjecting the corporation to the potential for inconsistent rulings from different jurisdictions with regard to its internal governing procedures.  *See* Frederick Tung, *Before Competition: Origins of the Internal Affairs Doctrine*, 32 J. Corp. L. 33, 40 (2005) ("Unlike more complex conflicts analyses used in other areas of law, the internal affairs doctrine offers a consistent choice of law for firms and their investors, for whom certainty is said to be critical").  As a result, there is little controversy where the doctrine is applied in the context of a litigation brought by one corporate insider (a shareholder, director or officer) against either the corporation itself or another insider over strictly corporate issues. Similarly uncontroversial is that no basis exists for application of the doctrine in the context of a claim by an "external" corporate creditor alleging breach of contract by the corporation.

The one area in which courts around the country have shown considerable inconsistency in applying the internal affairs doctrine is in the hybrid situation in which an

4

external contract creditor (or, for that matter, a non-insider making a tort claim against the corporation) seeks to have a defendant's corporate form disregarded in order to hold a particular shareholder or parent corporation liable.[2]  In deciding whether to apply the doctrine in that situation, courts have had to determine which relationship takes precedence for choice-of-law principles – the external relationship between the creditor and the corporation, or the internal relationship between the corporation and its shareholder or parent.  *See generally Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (holding that "[t]he law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders: 'Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away'") (quoting *Soviet Pan Am Travel Effort v. Travel Committee, Inc.,* 756 F. Supp. 126, 131 (S.D.N.Y.1991)).

Even further removed from that analysis is the situation at bar, where the first relationship is between an alleged contract creditor (plaintiff) and a corporation (TCI Switzerland), and the second relationship is between that corporation and a second corporation that is neither shareholder nor parent, but is instead alleged to be an "alter ego" of the first entity.  It is respectfully submitted that the "alter ego" analysis does not implicate the internal affairs of a corporation in the way that a parent-subsidiary relationship might, as a result of which there is little logic in applying the internal affairs doctrine to determine which jurisdiction's law should be applied regarding whether to pierce a corporate veil to hold an alleged "alter ego" entity liable.

---

[2]  "Veil piercing cases implicate corporate law but involve disputes that reach beyond the confines of the corporation.  Thus some courts have decided that the internal affairs doctrine applies in veil piercing cases and that the law of the state of incorporation should govern, while other courts have disagreed."  1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 43.72 (rev. 2006).

One commentator, Professor Gregory Crispi, has attributed the application of the internal affairs doctrine in veil piercing cases generally to a "fundamental misunderstanding of the meaning of section 307 of the Restatement (Second) of Conflicts of Laws." Gregory Scott Crespi, *Choice of Law in Veil-Piercing Litigation: Why Courts Should Discard The Internal Affairs Rule and Embrace General Choice-of-Law Principles*, 64 N.Y.U. Annual Survey of American Law 85, 92 (2008). Section 307 of the Restatement (Second), which is entitled "Shareholders' Liability," provides as follows: "The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contribution and to its creditors for corporate debts." As Professor Crispi notes:

> "[T]he courts that have followed the internal affairs doctrine . . . have done so simply because they have either read section 307 literally, and simplistically, as definitively endorsing the internal affairs approach without considering other relevant provisions of the Restatement (Second) or the underlying objectives sought by its drafters, or because they have uncritically followed earlier precedents so misinterpreting section 307 without given any real thought to the dubious rationale underlying those precedents."

Crispi, *supra* at 93. The comments to section 307 suggest that the drafters of the Restatement (Second) of Conflicts of Law intended that provision "to address only the question of shareholder liability for corporate debts under circumstances in which shareholders have not met their initial assessment or capital contribution obligations to the corporation." *Id.* at 114.

Perhaps it was the citation, made in plaintiff's memorandum of law in opposition to the pending motion, of this Court's decision in *Guinan v. A.I. duPont Hospital for Children*, 597 F. Supp 2d 485 (E.D. Pa. 2009),[3] that has elevated this issue of the applicability of the internal affairs doctrine. That was a medical malpractice action brought in federal district court

---

[3] Parenthetically, subsequent to the submission of both sides' initial briefs in this motion, the Court's decision in *Guinan* was affirmed in part and reversed in part, on grounds other than the choice-law law issue that was discussed in both sides' briefs, under the name *M.G. ex rel. v. A.I. duPont Hospital for Children*, 393 F. App'x 884 (3d Cir. 2010).

6

in Pennsylvania by a New Jersey resident, where the subject medical procedure had been

performed in a Delaware hospital. Among the defendants were Numed, Inc., a New York

corporation that had manufactured the heart stent that was implanted in the infant plaintiff, and

Allen Tower, that corporation's president, CEO, and sole shareholder. Applying Pennsylvania

choice-of-law principles, the Court chose Delaware law for all of the claims except for the veil-

piercing claim against Allen Tower. For that claim, the Court chose New York law, based upon

Numed's state of incorporation, citing both *Banjo Buddies* and the Internal Affairs Statute. *See*

*id.* at 495. It is respectfully submitted that the Court's holding in *Guinan* was incorrect because

*Banjo Buddies* involved a breach of fiduciary duties claim that fell within the scope of the

Internal Affairs Doctrine, while the veil-piercing claim brought by the New Jersey infant plaintiff

did not fall within the scope of that statute. In any event, applying New York law, the Court in

*Guinan* granted summary judgment dismissing the veil-piercing claim. *See id.* at 516.

Nevertheless, even if this Court were to accept the *Guinan* analysis, the action at

bar may be distinguished because it does not involve a claim against the alleged debtor

corporation's sole shareholder, but is instead directed to an alleged "alter ego," which as set forth

above does not implicate "internal affairs" principles as does a parent-subsidiary relationship.

C.   *Even if the Internal Affairs Doctrine Were Applied,*
     *The Motion Should be Granted Under Swiss Law*

As set forth in Section "B" above, we do not believe that the internal affairs

doctrine should be used in this Court's determination of which jurisdiction's law should be

invoked with regard to plaintiff's claim against Trans Commodities. Nevertheless, in the event

that this Court were to apply the internal affairs doctrine, it would be Swiss law – that is, the law

of the country in which the entity whose corporate veil plaintiff seeks to pierce was incorporated
– that would be applied.

Switzerland is famously protective of its corporations, which generally take one
of two forms – the "GmbH," which is akin to a limited liability company and is typically used by
small businesses, and the "AG," which is used for larger companies.  The corporation involved
here, TCI Switzerland, is (as is obvious from its name) an "AG" company.  "The AG is directly
equivalent, though not identical, to the American corporation, most often to the publicly-traded
American corporation.  It is a legal entity, internally and externally, characterized by delegated
management and limited liability of shareholders.  Like its counterparts within the EU – but very
much unlike the American corporation – the Swiss AG is subject to significant statutory
limitations on organization, structure and finance."  B. Becchio, U. Wehinger, A. Farha & S.
Siegel, Swiss Company Law, at 18 (2d ed. 1996).

One commentator, quoting from an arbitration decision of the International
Chamber of Commerce, explained the extent to which veil piercing is permitted under Swiss law
as follows:

> "In the United States . . . the concept of lifting the corporate veil is
> justifiable wherever the principle of limited liability gives rise to situations
> which are wholly unjust.  In Swiss law . . . [t]he Durchgriff theory is based
> upon the prohibition against abuse of law . . . a company's independence
> should only be disregarded in exceptional cases, where it is used
> fraudulently, that is contrary to the principle of good faith . . . ."

K. Youssef, Consent in Context: International Arbitration § 6:15 (2009) (a copy of which is
annexed hereto as Appendix A).[4]  It is respectfully submitted that the element of "fraudulent use"
referred to in this characterization of the Swiss law standard indicates a far more narrow, and
limited, basis for veil piercing than is discussed with regard to the Pennsylvania and New York

---

[4]  The word "Durchgriff" used in that quotation is a German word that means, essentially, "transparency."

law standards in our memorandum of law (dated January 29, 2010) and reply memorandum (dated April 16, 2010) submitted in support of the motion.

Therefore, the support for summary judgment is just as strong, if not stronger, under Swiss law than it would be for Pennsylvania or New York law.

**D.      *Under General Choice-of-Law Jurisprudence Followed in Pennsylvania, it Should be Pennsylvania Law That is Applied to Plaintiff's Claim Against Trans Commodities***

In diversity cases, such as the one at bar, federal courts typically "apply the choice of law principles of the forum state in which it sits." *United Brass Works, Inc. v. American Guarantee & Liability Insurance Co.*, 819 F. Supp. 465, 468 (W.D. Pa. 1992) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941)); *accord Coface Collections North American Inc. v. Newton*, 2011 WL 2176196 *3 n.6 (3d Cir. June 6, 2011); *American Contract Bridge League v. Nationwide Mutual Fire Insurance Co.*, 752 F.2d 71, 74 (3d Cir. 1985); *Atlantic Pier Associates, LLC v. Boardakan Restaurant Partners*, 647 F. Supp. 2d 474, 486-87 (E.D. Pa. 2009). Therefore, it is respectfully submitted that it should be Pennsylvania law that is applied to the question of which jurisdiction's law should be chosen for the resolution of plaintiff's substantive legal claims.

Pennsylvania courts follow the standard set forth in *Griffith v. United Airlines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964), where the Pennsylvania Supreme Court abandoned the common-law doctrines of *lex loci delicti* and *lex loci contractus* in favor of a more flexible approach that "permits analysis of the policies and interests underlying the particular issue before the court." *Id.* at 21, 203 A.2d at 805. Moreover, the *Griffith* standard applies equally to contract cases as it does to tort cases. *See, e.g., Hammersmith v. TIG Insurance Co.*, 480 F.3d 220, 228 (3d Cir. 2007); *Budtel Associates, LP v. Continental Casualty Co.*, 915 A.2d 640, 644

9

(Pa. Super. Ct. 2006).  Because *Griffith* discussed the Restatement (Second) of Conflicts of Law,

and utilized some of its provisions in resolving choice-of-law issues, a number of federal courts

have used the same approach as the starting point for their choice of law analysis.  *See, e.g.,*

*Compagnie des Bauxites de Guinee v. Argonaut-Midwest Insurance Co.,* 880 F.2d 685, 689-91

(3d Cir. 1989); *Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1308-09 (3d Cir.

1978); *American International Underwriters Corp. v. Zurn Industries, Inc.,* 771 F. Supp. 690,

694-95 (W.D. Pa. 1991).

      In *O'Loughlin v. Hunger*, 2009 WL 1084198 (E.D. Pa. Apr. 21, 2009), this Court

articulated the following methodology for a choice-of-law analysis:

> "Pennsylvania adopts a 'flexible rule which permits analysis of the
> policies and interests underlying the particular issue before the court.' . . . .
> This analysis entails three steps.  First, the court must determine whether a
> real conflict exists, that is, whether these states would actually treat this
> issue any differently. . . .  If there is no substantive difference between the
> laws of the competing states, no real conflict exists and a choice of law
> analysis is unnecessary. . . .  Where a real conflict exists, the court moves
> to the second step and examines the governmental policies underlying
> each law in order to classify the conflict as 'true,' 'false,' or an
> 'unprovided-for' situation. . . .  A false conflict occurs where only one
> state's interests would be impaired, necessitating the application of the
> interested state's law. . . .  Where, on the other hand, each jurisdiction has
> a governmental policy or interest that would be impaired by the
> application of the other state's law, a true conflict exists. . . .  In the case of
> a true conflict, the court turns to the third step to 'determine which state
> has the."greater interest in the application of its law.'" . . . .  This
> determination demands that a court weigh the contacts each jurisdiction
> has with the dispute on a qualitative scale according to the extent they
> implicate the policies and interests underlying the particular dispute before
> the court."

Id. at *8 (citations omitted).

      Applying these principles at bar, it is respectfully submitted that no justification

exists for applying the law of any jurisdiction other than the one in which this Court sits.  First,

there is no "real" conflict, inasmuch as the law of the three jurisdictions that could be said to

10

have some contact with this dispute – that is, the places where the parties come from,

Pennsylvania (plaintiff), Switzerland (TCI Switzerland), and New York (Trans Commodities) –

would each mitigate in favor of dismissing plaintiff's attempt to invoke "alter ego" liability upon

Trans Commodities, although that conclusion might be reached differently in each of the three

jurisdictions.[5]  Therefore it is respectfully submitted that this Court need not proceed to an

analysis of whether there is some "true," "false" or "unprovided-for" conflict.

   Furthermore, even if there were a "true" conflict, it is respectfully submitted that

Pennsylvania law should still be applied under an interest-balancing analysis.  *See Specialty*

*Surfaces International, Inc. v. Continental Casualty Co.*, 609 F.3d 223, 230 (3d Cir. 2010) ("if

confronted with a true conflict, we first consider each state's contacts with the contract as set

forth in the *Restatement (Second) of Conflict of Laws*") (citing *Hammersmith, supra* at 231;

*Compagnie des Bauxites, supra* at 689; *Melville, supra* at 1311).  Under such an analysis, the

Court would "weigh the contacts on a qualitative scale according to their relation to the policies

and interests underlying the [relevant] issue." *Id.* (quoting *Shields v. Consolidated Rail Corp.*,

810 F.2d 397, 400 (3d Cir.1987)).  This inquiry "employs a combination of 'the approaches of

both [the] Restatement II (contacts establishing significant relationships) and interest analysis

(qualitative appraisal of the relevant States' policies with respect to the controversy).' . . . This

analysis requires more than a 'mere counting of contacts.' . . . The court must 'weigh the

---

[5]  As set forth in greater detail in our memorandum of law and reply memorandum in support of the motion, Pennsylvania law does not recognize the "enterprise theory" of alter ego liability that is being urged by plaintiff in this case.  As set forth in Section "C" above, Swiss law would not provide plaintiff with a means for piercing the corporate veil of TCI Switzerland because plaintiff has not demonstrated that the company's corporate form was used "fraudulently" against it with regard to the matter in dispute.  Lastly, in our reply memorandum, we explained how New York law would not support any finding of liability against Trans Commodities, based on the "evidence" submitted by plaintiff, because plaintiff is unable to satisfy the requirements of either one of the two prongs mandated by the New York Court of Appeals in *Morris v. New York State Department of Taxation and Finance*, 82 N.Y.2d 135, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993).

11

contacts on a qualitative scale according to their relation to the policies and interests underlying

the [particular] issue.'" *Id.* (quoting *Hammersmith, supra* at 231).

>    The relevant section of the Restatement (Second) provides as follows:

> (1) The rights and duties of the parties with respect to an issue in contact
>     are determined by the local law of the state which, with respect to that
>     issue, has the most significant relationship to the transaction and the
>     parties under the principles stated in § 6.
> (2) In the absence of an effective choice of law by the parties (see § 187),
>     the contacts to be taken into account in applying the principles of § 6
>     to determine the law applicable to an issue include: (a) the place of
>     contracting, (b) the place of negotiation of the contract, (c) the place of
>     performance, (d) the location of the subject matter of the contract, and
>     (e) the domicile, residence, nationality, place of incorporation and
>     place of business of the parties.  These contacts are to be evaluated
>     according to their relative importance with respect to the particular
>     issue.
> (3) If the place of negotiating the contract and the place of performance
>     are in the same state, the local law of this state will usually be applied,
>     except as otherwise provided in §§ 189-199 and 203.

Restatement (Second) of Conflicts of Laws § 188.[6]

>    Obviously, there was no choice-of-law provision contained in the "contract" (that

is, the three letters that plaintiff alleges were the basis of its commission agreement with TCI

Switzerland) that is the subject of this action.  Nevertheless, it is inescapable that this transaction

involved a sales agent (plaintiff) located in Pennsylvania, which claims to have been engaged to

sell product, on behalf of a company located in Switzerland, to buyers located throughout the

United States.  No entity from, or located in, the State of New York is alleged by plaintiff to have

been involved in the negotiating or making of that agreement, nor was any of the product alleged

to have been sold ever located in New York.  At best, plaintiff alleges that one or more

representatives of Trans Commodities were involved on a limited basis, and on behalf of TCI

---

[6]  The referenced sections in the last subpart of that quotation – sections 189-199 and 203 – relate to certain specific types of contracts for which special choice of law rules apply, and with certain issues relating to the capacity to contract, writing requirements, and usury limitations.

Switzerland, in certain aspects of plaintiff's performance, and that Trans Commodities' chief executive officer, Semyon Kislin, was a "beneficial owner" of TCI Trans Commodities. It is respectfully submitted, however, that these allegations do not create New York "contacts" with this dispute that in any way outweigh the contacts of the Commonwealth of Pennsylvania, where plaintiff was located when its principal, Michael Macready, negotiated and entered into the subject agreement, and from where Mr. Macready performed all aspects of the sales transactions that are alleged to be the basis for plaintiff's commission claim.

   Certainly, plaintiff is hard-pressed to argue that New York State has any significant interest in the outcome of this case, particularly inasmuch as the only party from New York, Trans Commodities, is not even asking that New York law be applied. As a result, it is respectfully submitted that no justification exists for imposing the law of any jurisdiction other than Pennsylvania to this case generally, or to the specific issue now before this Court.

## Conclusion

For all of the foregoing reasons, as for the reasons set forth in the prior submissions made in support of the motion, it is respectfully requested that the motion be granted in all respects and that the Amended Complaint be dismissed as against defendant Trans Commodities, Inc.

Dated: September 6, 2011

<div style="margin-left: 40%;">

Respectfully submitted,

**KESTENBAUM, DANNENBERG & KLEIN, LLP**
By: _____*s/Jeffrey C. Dannenberg*_____
Jeffrey C. Dannenberg (NY Bar No. 1894211)
    By admission *pro hac vice*
104 West 40th Street (20th Floor)
New York, NY 10018
(212) 486-3370 (phone)/(212) 486-3371 (facsimile)
Email: jdannenberg@kdklaw.com

**BEGLEY, CARLIN & MANDIO**
Of Counsel: James A. Downey, III, Esq.
    Attorney I.D. #17533
680 Middletown Boulevard
P.O. Box 308
Langhorne, PA 19047
(215) 750-0110 (phone)/(215) 750-0954 (facsimile)
Email: jdowney@begleycarlin.com

*Attorneys for Defendant Trans Commodities, Inc.*

</div>

## CERTIFICATE OF SERVICE

I CERTIFY that on September 6, 2011, I electronically filed this document with the Clerk of the Court using the CM/ECF system. I also certify that this document is being served this day upon all counsel of record or pro se parties identified below in the manner specified, either by transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<div align="right">

s/Jeffrey C. Dannenberg
Jeffrey C. Dannenberg

</div>

*Via Notice of Electronic Filing*

Scott D. Patterson, Esq.
spatterson@saul.com
SAUL EWING LLP
*Attorneys for Plaintiff*
1200 Liberty Ridge (Suite 200)
Wayne, PA 19087-5055
(610) 251-5050
(610) 408-4407 (facsimile)

15

# APPENDIX A

Consent in Context: International Arbitration § 6:15

Consent in Context Fulfilling the Promise of International Arbitration
Database updated December 2009

Karim Youssef

Part II. Complex Jurisdiction or the Disintegration of the Arbitration Agreement

Benjamin Constant, De L'esprit De La Conquête De De l'Usurpation Dans Leur Rapport Avec La Civilisation

Chapter 6. Judicial Theories of Extension to Nonsignatories or to Related Contracts
II. Extension of the Arbitration Agreement in Groups of Companies
B. Alternative Theories in Comparative Law

Summary

§ 6:15. Veil piercing

It has been suggested that the threshold for veil piercing in the United States is, as a result of the paramount policy in favor of arbitration, much less stringent than that adopted in European jurisdictions.1 U.S. courts generally accept the proposition that the corporate veil may be pierced to extend to the parent company the arbitration clause concluded by its subsidiary when the two entities are significantly intertwined.2 A "close relationship" between the entities involved seems to suffice to justify extension to the parent company.3
At the opposite end, German law admits, only in very limited circumstances, piercing the corporate veil.4 English law also adopts a restrictive test.5

In ICC case 5721,6 the tribunal had this to say on the principle of veil piercing under U.S., Swiss, and Egyptian laws:
In the United States ... the concept of lifting the corporate veil is justifiable wherever the principle of limited liability gives rise to situations which are wholly unjust. In Swiss Law ....[t]he Durchgriff theory is based upon the prohibition against abuse of law ... a company's independence should only be disregarded in exceptional cases, where it is used fraudulently, that is contrary to the principle of good faith ... Egyptian law does not contradict these general principles. It too attaches decisive importance to the principle of good faith and punishes any abuse of the law ....7
Recent U.S. cases may connote, however, an evolution towards a more conservative approach. Piercing the veil requires two conditions: that the nonsignatory exercises complete domination over the signatory with respect to the contract at issue, and that such domination "was used to commit wrong [or] fraud ... [which] caused ... injury" to the party seeking to pierce the veil.8 In other words, some abuse of the corporate form needs to be characterized.9 This more conservative approach seems to prevail over the federal policy in favor of arbitration. In general, "courts do not lightly pierce the corporate veil, *even in deference to the strong policy favoring arbitration*,"10 "the principle of limited liability, [being] the cornerstone of corporate law."11 This is a very rare, if not the only, exception to the usual undisputed supremacy of the federal policy in favor of arbitration.12
In *Bridas SAPIC v. Government of Turkmenistan, et al.,*13 U.S. courts had to decide whether the joint venture agreement (JVA) for the exploration of natural gas, concluded between *Bridas*, an Argentinean company, and a state-owned enterprise of the government of Turkmenistan, which included an ICC arbitration clause, can be extended to the state itself. The ICC tribunal held that the state is party to the JVA on the basis that only the government could perform the contractual commitments under the JVA.14 The Court of Appeals for the Fifth Circuit, reversing the lower court's ruling which confirmed the ICC award, decided that the government of Turkmenistan is *not* bound by the arbitration agreement under general principles to bind nonsignatories relied upon by the district court, including agency, estoppel, and third-party beneficiary.15

On second appeal, the court rejected the district court's finding that substantial involvement of the nonsignatory state in the activities of the signatory company was "an insufficient showing of complete domination or extensive control."16 In *Bridas*, emphasis was on whether involvement in performance justified veil piercing. Nevertheless, substantial involvement may be

sufficient evidence of consent to arbitrate, and Turkmenistan could have arguably been compelled to arbitrate, not based on veil piercing or alter ego, but on the alternative finding of implied consent.

1    Hanotiau, p. 59.

2    The rationale behind piercing the veil is that the parent company controls largely the actions of the subsidiary and, hence, is likely to influence the contracts it concludes, including the arbitration clause.

3    Sunkist Soft Drinks, Inc. v. Sunkist Growers Inc., 10 F.3d 753, 758 (11th Circ. 1993) The nonsignatory parent company was entitled to compel the signatory claimant to arbitrate the claim it brought to court on the basis of "the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory obligations and duties in the contract." Smoothline Ltd. v. North American Foreign Trading Corp., 2002 WL 31885795 (S.D. N.Y. 2002); Beiser v. Weyler, 284 F.3d 665 (5th Cir. 2002); E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S., 269 F.3d 187 (3d Cir. 2001); Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intern., Inc., 198 F.3d 88 (2d Cir. 1999); United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd., 76 F.3d 393 (10th Cir. 1996); Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773 (2d Cir. 1995).

4    Hanotiau, p. 96, and references in fn. 250.

5    Veil may be pierced only when the corporate structure is used to evade mandatory legal provisions or to obstruct the enforcement of rights of third parties. Hanotiau p. 69.

6    ICC award no. 5721 (1990), European company v. American and Egyptian parties, 117 J.D.I. 1020 (1990), observations by Y. Derains; Collection of ICC awards, II (1986-1990), at p. 400.

7    Collection of ICC awards, at pp. 404–405.

8    Smoothline Ltd. v. North American Foreign Trading Corp., 2002 WL 31885795 (S.D. N.Y. 2002), at p. 11.

9    TNS Holdings, Inc. v. MKI Securities Corp., 92 N.Y.2d 335, 680 N.Y.S.2d 891, 703 N.E.2d 749, 751 (1998), refusing to pierce the corporate veil on the basis of "inextricably interwoven" agreements alone as "there is no showing that through its domination, [the nonsignatory] misused the corporate form for its personal ends so as to commit fraud or wrongdoing or avoid any of its obligations."

10    ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1461 (10th Cir. 1995).

11    InterGen N.V. v. Grina, 344 F.3d 134, 150 (1st Cir. 2003).

12    Over the last 30 years, the federal policy in favor of arbitration has consistently trumped conflicting public policies pertaining to other fields of economic regulation (for instance, antitrust laws), as witnessed in the long line of decisions of the U.S. Supreme Court gradually expanding the scope of arbitrable claims (*inter alia*, Mitsubishi Motors v. Soler Chrysler-Plymouth, 473 U.S. 614).

13    *Bridas*, 345 F.3d 347 (5th Circ. 2003); and on second appeal, 447 F.3d 411 (5th Circuit, 2006).

14    Bridas SAPIC, Bridas Energy International Ltd and Intercontinental Oil and Gas Ventures Ltd v. Government of Turkmenistan, ICC case no. 9058 Third Partial Award Award of September, 2, 2000). Mealey Publications, Doc. # 05-011026-014A, p. 22, (2004) 19:10 Mealey's International Arbitration Report 6.

15    With respect to alter ego, the case was remanded to the district court for further hearing and reconsideration of whether Turkmeneft was, in fact, alter ego of the State of Turkmenistan. 345 F.3d 347, 360–361.

16    Bridas II, 447 F.3d 411, 415 (5th Circuit, 2006) citing the Texas District Court's 2004 ruling exonerating the State of Turkmenistan from alter ego liability. The Fifth Circuit found that Turkmeneft's corporate veil should be pierced to make Turkmenistan directly liable under the ICC awards. "Despite some indicia of separateness, the reality was that when the Government's export ban forced Bridas out of the joint venture, the Government then exercised its power as a parent entity to deprive Bridas of a contractual remedy. Intentionally bleeding a subsidiary to thwart creditors is a classic ground for piercing the corporate veil … The Government, as Turkmenneft's owner, made it impossible for the objectives of the joint venture to be carried out… In this rare case, we are compelled to reverse the district court's finding and conclude that the Government acted as the alter ego of Turkmenneft in regard to this Joint Venture Agreement with Bridas." *Bridas II,* at 420. For a detailed discussion of the case, *see* ASA Bulletin, Vol. 24 No. 3 (2006), pp. 584–599.

---

**End of Document**                                                 © 2011 Thomson Reuters. No claim to original U.S. Government Works.

 © 2011 Thomson Reuters. No claim to original U.S. Government Works.